EXHIBIT A

1
2
3
4
5

# SUPERIOR COURT OF WASHINGTON
# FOR KING COUNTY

6
7

T.S.,

8

               Plaintiff,

       v.

TOTE Services, LLC,

              Defendants.

No. 21-2-02611-3 SEA

**AMENDED COMPLAINT FOR
DAMAGES**

9
10
11
12
13
14

COMES NOW the Plaintiff T.S. and complains of TOTE Services, LLC, as well as associated, predecessor and successor entities, (hereinafter, "TOTE"):

15

## I.      PRELIMINARY STATEMENT

16
17
18
19
20
21
22
23

In this suit, T.S., a gay woman, challenges the unlawful treatment she suffered while employed as a Third Mate aboard the TOTE vessel M/V Perla Del Caribe. T.S. was subjected to homophobic harassment and thinly veiled threats by Able-Bodied Seaman Efren Ramos Sosa during their daily watch shifts together. When she brought the issue to the Captain, Kevin Stith, he excused Ramos Sosa's behavior, forbade T.S. to talk about being gay, discouraged her from calling HR, and then ordered her to stay in her cabin for nine hours. No action was taken by Captain Stith or TOTE to protect the Plaintiff. T.S. fled the M/V Perla Del Caribe as soon as HR agreed to fly her home.

24
25

After these traumatizing experiences, T.S.—who aspired to have a long career as a seaman—is fearful to the shipping industry out of fear for her safety. She has suffered great

Lavender Rights Project
1004 MLK Way, Tacoma, WA 98405
P: (206) 639-7955 F: (206) 374-2853

financial and emotional losses, and continues to experience medical problems due to the effects of the trauma.

## II.   PARTIES, JURISDICTION, AND VENUE

1. Plaintiff resides in Seattle, Washington. She was at all times material to this action a resident of Kitsap County, Washington.

2. Defendant TOTE Services, LLC, is a Foreign Limited Liability Company doing business in in Federal Way, King County, Washington.

3. Defendant Kevin Stith was the Captain of the TOTE vessel where the events of this case took place, and is a resident of New Orleans.

4. Defendant Efren Ramos Sosa was an Able Bodied Seaman on the TOTE vessel where the events of this case took place, and is a resident of San Juan/Puerto Rico.

5. Jurisdiction is proper in King County Superior Court pursuant to RCW 2.08.010 and the "Savings to Suitors Clause," 28 U.S.C. § 1333(1).

6. Venue is proper in King County, Washington pursuant to RCW 4.12.025.

7. Plaintiff has obtained proper service of process on Defendants.

## III.   FACTUAL ALLEGATIONS

1. T.S. was hired on December 6, 2018, as a Third Officer on the M/V Perla Del Caribe. She reported to Captain Kevin Stith, and worked daily with Able-Bodied Seaman Efren Ramos Sosa.

2. T.S. took measures to keep her personal life private and to ward off sexism and homophobia from coworkers. T.S. wore a fake wedding ring, and kept quiet about her sexual

orientation. T.S. anticipated that men on the ship would react badly if they knew she was gay because of the sexist and homophobic culture that she had experienced under Captain Stith on a previous hitch and in the industry at large.

2.      T.S. and Mr. Ramos Sosa were scheduled to work the same watch shift. Mr. Ramos Sosa talked constantly about his girlfriend, including their sex life, while on watch with T.S. After two weeks of daily 4-hour watch shifts during which Mr. Ramos Sosa talked about his girlfriend, T.S. mentioned that she was also seeing a woman casually back home.

3.      As soon Mr. Ramos Sosa learned that T.S. was gay, his attitude towards her became openly hostile. Mr. Ramos Sosa refused to follow her orders, although she was his superior officer. When she would give him an order, he would frequently respond, "Fuck you, I'm not doing that."

4.      Between December 21st and 24th of 2018, Mr. Ramos Sosa made degrading comments to T.S. about how unimportant her job was, saying that she didn't know anything about shipping, and that he had more responsibility than her.

5.      Mr. Ramos Sosa also told T.S. that "all gays are faggots."

5.      On another occasion, Mr. Ramos Sosa told T.S. that he holds grudges against people, and that he had set a car on fire before to get revenge on someone who had "wronged him."

6.      T.S. reported the harassment and veiled threats to Chief Officer Douglas Voss on several occasions between December 24, 2018, and January 2, 2019, but insufficient steps were taken to address the behavior.

7.      T.S. remained professional and only engaged with Mr. Ramos Sosa when absolutely necessary. However, Mr. Ramos Sosa frequently refused to do his job, which T.S., as his supervisor, could not let slide.

AMENDED COMPLAINT FOR DAMAGES
Page 3 of 10

Lavender Rights Project
1004 MLK Way, Tacoma, WA 98405
P: (206) 639-7955 F: (206) 374-2853

8.     On January 2, 2019, T.S. asked Mr. Ramos Sosa not to sit down on watch, as it was against the rules. He responded, "Hell no, you ain't going to do a power trip on my ass." T.S. had to call the Captain to get Mr. Ramos Sosa to comply. Refusing to follow a superior officer's orders is a fireable offense.

9.     When T.S. attempted to explain the situation, Captain Stith put his hand in her face and said, "No. Not your turn." He then asked Mr. Ramos Sosa to comply with T.S.'s orders "for him." Mr. Ramos Sosa at first refused, but the Captain eventually talked him into it. Again, refusing a superior officer's orders should have come with some form of discipline, but Mr. Ramos Sosa was allowed to go on with his work as usual.

10.     When T.S. reported Mr. Ramos Sosa's ongoing behavior to Captain Stith later that day, he responded that she should not have talked about being gay. He said, explicitly, that Mr. Ramos Sosa had a problem with her being a "young gay female." He ordered her never to talk about her personal life again, and discouraged her from calling HR so he could have more time to "change [Mr. Ramos Sosa's] mind about homophobia." He refused to switch her shift so she could get away from her harasser.

11.     Almost immediately after this conversation, the Captain asked Mr. Ramos Sosa about his girlfriend in front of T.S. It was clear that the rule was not "don't talk about your relationships," but rather, "don't talk about being gay."

12.     On January 3, 2019, T.S. observed Mr. Ramos Sosa writing in a journal for 45 minutes and not fulfilling his duties, including not updating the ship's heading. Being on watch is like being a lifeguard; any activity that would take your eyes off of the water is strictly prohibited, for safety reasons. When T.S. asked him to please stop writing, he responded, "Do you think I give a shit what you say?" T.S. called the Captain to intervene.

Lavender Rights Project
1004 MLK Way, Tacoma, WA 98405
P: (206) 639-7955 F: (206) 374-2853

13.    When Captain Stith arrived on the bridge, he did not allow T.S. to explain, but instead ordered her to go to her room and stay in there until he released her. The Captain kept her in her room for 9 hours.

14.    For the first 20 minutes of being confined to her room, T.S.'s intra-ship phone line appeared to be disabled. She asked Captain Stith if she could use the ship's satellite phone to call HR.

15.    When she got in touch with HR at around 9:30 am, the HR representative said they would not pay to fly her home until the HR investigation was complete. This could have been months.

16.    T.S. was terrified, and wanted to leave the ship immediately. She sent HR her notes on the situation, ending with: "Please help me."

17.    At 11:00 am, the Captain came by T.S.'s cabin and told her he felt like he "let her down." However, he did not release her from her room.

18.    At 4:00 pm, T.S. asked if she could go to work. The Captain said he didn't know yet.

19.    While she was confined to her room, she missed the opportunity to do overtime work from 1:00 to 5:00 pm.

20.    At 6:00 pm, the Captain called T.S. and told her he was going to let her go back to work for the night's watch shift with a different Able Bodied Seaman, Cole Linnell.

21.    At 9:00 pm, the Captain accused T.S. of missing an inspection. T.S. explained that this specific inspection wasn't part of her duties, but she was willing to take it on in the future. The Captain agreed, but then told T.S. that he had actually already done this inspection on December 28, 2018. T.S. found it strange that the Captain had accused her of forgetting about a task that was not assigned to her and that he had already completed 6 days prior.

22.     After experiencing mistreatment by both the AB and the Captain, T.S. started keeping her room locked because she was afraid someone would take or tamper with the log that she was keeping.

23.     The next day, when she went to the galley to order breakfast, she saw Mr. Ramos Sosa and did not feel comfortable being in the same room as him. She was astounded that he had not been sent home for his harassment against her, and began to realize that no one on the ship had her back. She started taking all her meals back to her room.

24.     That morning, the Captain shadowed T.S. on her watch, scrutinizing her work for mistakes. To T.S.'s knowledge, the Captain did not shadow any other employees in this way.

25.     At 3:30 pm, T.S. was instructed to walk around the deck to look for something to do. She felt fearful of running into Mr. Ramos Sosa while alone on the deck.

26.     At 4:00 pm, she asked the Captain if she could use the satellite phone to call her union representative because she was feeling unsafe.

27.     The Captain pressured T.S. to explain, again, why she felt unsafe. When she did, he became defensive, and refused to do anything.

28.     In her logs from this time, T.S. describes the "mental torture" she was going through because she was fearful of retaliation from both Mr. Ramos Sosa and the Captain.

29.     At 6:00 pm, T.S. again talked to the Captain about her safety concerns. This time, he said she would not have to work with Mr. Ramos Sosa anymore. T.S. did not trust him or feel that the issue was truly resolved.

30.     On January 5, T.S. woke up feeling, in her own words, "uncomfortable and emotionally exhausted/crying from feeling so continuously distraught, isolated, fearful of retaliation/targeting, and feeling unsafe."

31.     The ship arrived in Puerto Rico. T.S. called HR and pleaded with them to help her get off of the ship immediately. HR changed their tune, and offered to fly her to Florida the next day. They said this was because she had said the specific words, "I feel unsafe," that they were able to fly her back to the U.S. This was confusing to T.S., as she had been communicating her fear for her safety since the last incident, and had sent them her entire log of the harassment incidents.

32.     Later that day, T.S. talked to Mr. Voss and told him everything that had been going on. Mr. Voss responded, "I hope one day, as you get older, that you can see this from the Captain's side, and know how much he has going on, and how nice it is for him to be focusing on dealing with you."

33.     On the morning of January 6, 2019, T.S. volunteered to take the watch shift until noon, even though she was about to leave the ship and was not obligated to do this. During this shift, Mr. Voss called T.S. out on the radio for failing to unplug a refrigerated container from the deck. Unplugging this container was not T.S.'s responsibility, and this call-out was another contrived and baseless reprimand, just like the Captain accusing her of missing an inspection. It was clear that Captain Stith and Mr. Voss were looking for reasons to get T.S. in trouble.

34.     Later that day, T.S. flew from Puerto Rico to Florida, and met with HR to discuss her treatment on the ship. During this conversation, HR suggested that T.S., a gay woman, had been in a sexual relationship with Mr. Ramos Sosa, and asked if she had ever sexually harassed him. HR told T.S. that it would take six weeks for them to conclude their investigation, but that she was "welcome to return to the ship at any time."

37.     Unable to go back to the incredibly hostile work environment with no changes made, T.S. sent in her resignation on February 28th, 2019.

38.    T.S. was constructively discharged after enduring homophobic and sexist harassment from her AB and the Captain. The Captain not only participated in the harassment, but also negligently refused to manage the AB's behavior or follow anti-harassment procedures. T.S. had to flee the ship, whereas Mr. Ramos Sosa was able to carry on with his career.

40.    T.S. has suffered greatly since being forced out of the industry. She was working as a waitress, then as a bartender, and is now unemployed. She does not feel safe returning to the shipping industry at all, which is significant because she spent considerable time and money on education in this field, having graduated from the California Maritime Academy with a BS in marine transportation, minor in law, and simultaneously earned the US Coast Guard Unlimited Tonnage 3rd Mate License.

41.    Furthermore, T.S. can no longer access the $2,793.69 in her AMO Pension plan, which she would have had access to if she had worked 100 days at sea in 2019.

42.    T.S. has been diagnosed with PTSD from the events that transpired on the TOTE vessel. She has experienced trauma flashbacks, vomiting, fainting, recurring nightmares, insomnia, hyper vigilance, hair pulling, vertigo, and headaches. She had to go to the ER on one occasion after fainting during a particularly bad flashback.

## IV.    CAUSES OF ACTION

The above paragraphs are herein incorporated by this reference.

1. **Discrimination:** Defendants, by and through their actions and/or omissions, discriminated against Plaintiff T.S. on the basis of her sex and sexual orientation in violation of RCW 49.60.

2. **Harassment:** Defendants, by and through their actions and/or omissions, harassed Plaintiff T.S. because of her sex and sexual orientation in violation of RCW 49.60 and WAC 162-32-040.

3. **Intentional Infliction of Emotional Distress:**  Defendants, by and through their actions and/or omissions, intentionally inflicted emotional distress upon Plaintiff T.S. in violation of RCW 49.60.

4. **Negligent Infliction of Emotional Distress:**  Defendants, by and through their actions and/or omissions, negligently inflicted emotional distress upon Plaintiff T.S. in violation of RCW 49.60.

5.  **Constructive Discharge:** The conduct, acts and omissions of Defendants were the proximate cause of Plaintiff's resignation from employment with TOTE, and constitute constructive discharge in violation of RCW 49.60.

6. **Maintenance and Cure:** Plaintiff is entitled to compensation under the common law duty of a ship owner to provide maintenance and cure.

7. **Other Claims:**  Plaintiff reserves the right to conduct discovery into alternative claims and additional defendants and to amend these charges as necessary.

## VII. PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment against Defendants as follows:

1. That the Plaintiff be awarded damages for humiliation, personal indignity, embarrassment, fear, sadness, anger, anxiety, anguish and other forms of emotional distress she has experienced, in an amount to be proven at trial;

2. That Plaintiff be awarded lost wages stemming from the constructive discharge;

3. That the Plaintiff be awarded pre- and post- judgment interest to the extent authorized by law;

Lavender Rights Project
1004 MLK Way, Tacoma, WA 98405
P: (206) 639-7955 F: (206) 374-2853

4. That Plaintiff be awarded compensation for the medical care needed to treat the psychological injuries inflicted aboard the vessel, as well as day-to-day living expenses, until she is fit for duty, or until she has reached a point where additional medical treatment will not help her;

5. That Plaintiff be awarded all other actual damages;

6. That Plaintiff be awarded his reasonable attorney's fees and costs; and

7. That Plaintiff be awarded such other relief as the Court deems just and proper.

DATED April 2, 2021.

Lavender Rights Project, by:

_____
Morgan Mentzer, WSBA #47483
Attorney for Plaintiff T.S.

**AMENDED COMPLAINT FOR DAMAGES**
Page 10 of 10

EXHIBIT B

ØŠÒÖ

G€GFÁ¿ÒÓÁGÍ ÁFG¼Í JÁÚT
SŒ Õ ÁÖUW Þ VÝ
ÙWÚÒÜ Ø Ü ÁÖUWÜ VÁÖŠÒ ÜS
ÒÈZ ŠÒÖ
ÔŒ Ü Ò ÁÃ¼Á¼GFÈ GÈ Gˑ FFÈ HÁ ÙÒŒ

# SUPERIOR COURT OF WASHINGTON
# FOR KING COUNTY

| | |
|---|---|
| T.S., | |
|         Plaintiff, | No. |
|     v. | |
| TOTE, Inc., TOTE Services, LLC, Kevin Stith, and Efren Ramos Sosa, | **COMPLAINT FOR DAMAGES** |
|         Defendants. | |

COMES NOW the Plaintiff T.S. and complains of TOTE, Inc., subsidiary TOTE Services, LLC, as well as associated, predecessor and successor entities, (hereinafter, "TOTE"), Kevin Stith ("Captain Stith"), and Efren Ramos Sosa ("Mr. Ramos Sosa"), as follows:

## I.      PRELIMINARY STATEMENT

In this suit, T.S., a gay woman, challenges the unlawful treatment she suffered while employed as a Third Mate aboard the TOTE vessel M/V Perla Del Caribe. T.S. was subjected to homophobic harassment and thinly veiled threats by Able-Bodied Seaman Efren Ramos Sosa during their daily watch shifts together. When she brought the issue to the Captain, Kevin Stith, he excused Ramos Sosa's behavior, forbade T.S. to talk about being gay, discouraged her from calling HR, and then ordered her to stay in her cabin for nine hours. No action was taken by Captain Stith or TOTE to protect the Plaintiff. T.S. fled the M/V Perla Del Caribe as soon as HR agreed to fly her home.

**COMPLAINT FOR DAMAGES -** Page 1 of 10

After these traumatizing experiences, T.S.—who aspired to have a long career as a seaman—is fearful to the shipping industry out of fear for her safety. She has suffered great financial and emotional losses, and continues to experience medical problems due to the effects of the trauma.

## II.        PARTIES, JURISDICTION, AND VENUE

1. Plaintiff resides in Seattle, Washington. She was at all times material to this action a resident of Kitsap County, Washington.

2. Defendant TOTE Services, LLC, is a Foreign Limited Liability Company doing business in in Federal Way, King County, Washington.

3. Defendant TOTE, Inc., is the parent company of TOTE Services, LLC, and is a Washington Limited Liability Company doing business in Federal Way, King County, Washington.

4. Defendant Kevin Stith was the Captain of the TOTE vessel where the events of this case took place, and is a resident of New Orleans.

5. Defendant Efren Ramos Sosa was an Able Bodied Seaman on the TOTE vessel where the events of this case took place, and is a resident of San Juan/Puerto Rico.

6. Jurisdiction is proper in King County Superior Court pursuant to RCW 2.08.010 and the "Savings to Suitors Clause," 28 U.S.C. § 1333(1).

7. Venue is proper in King County, Washington pursuant to RCW 4.12.025.

8. Plaintiff has obtained proper service of process on Defendants.

## III.        FACTUAL ALLEGATIONS

COMPLAINT FOR DAMAGES - Page 2 of 10

1.     T.S. was hired on December 6, 2018, as a Third Officer on the M/V Perla Del Caribe. She reported to Captain Kevin Stith, and worked daily with Able-Bodied Seaman Efren Ramos Sosa.

2.     T.S. took measures to keep her personal life private and to ward off sexism and homophobia from coworkers. T.S. wore a fake wedding ring, and kept quiet about her sexual orientation. T.S. anticipated that men on the ship would react badly if they knew she was gay because of the sexist and homophobic culture that she had experienced under Captain Stith on a previous hitch and in the industry at large.

2.     T.S. and Mr. Ramos Sosa were scheduled to work the same watch shift. Mr. Ramos Sosa talked constantly about his girlfriend, including their sex life, while on watch with T.S. After two weeks of daily 4-hour watch shifts during which Mr. Ramos Sosa talked about his girlfriend, T.S. mentioned that she was also seeing a woman casually back home.

3.     As soon Mr. Ramos Sosa learned that T.S. was gay, his attitude towards her became openly hostile. Mr. Ramos Sosa refused to follow her orders, although she was his superior officer. When she would give him an order, he would frequently respond, "Fuck you, I'm not doing that."

4.     Between December 21st and 24th of 2018, Mr. Ramos Sosa made degrading comments to T.S. about how unimportant her job was, saying that she didn't know anything about shipping, and that he had more responsibility than her.

5.     Mr. Ramos Sosa also told T.S. that "all gays are faggots."

5.     On another occasion, Mr. Ramos Sosa told T.S. that he holds grudges against people, and that he had set a car on fire before to get revenge on someone who had "wronged him."

**COMPLAINT FOR DAMAGES -** Page 3 of 10

Lavender Rights Project
1004 MLK Way, Tacoma, WA 98405
P: (206) 639-7955 F: (206) 374-2853

6.      T.S. reported the harassment and veiled threats to Chief Officer Douglas Voss on several occasions between December 24, 2018, and January 2, 2019, but insufficient steps were taken to address the behavior.

7.      T.S. remained professional and only engaged with Mr. Ramos Sosa when absolutely necessary. However, Mr. Ramos Sosa frequently refused to do his job, which T.S., as his supervisor, could not let slide.

8.      On January 2, 2019, T.S. asked Mr. Ramos Sosa not to sit down on watch, as it was against the rules. He responded, "Hell no, you ain't going to do a power trip on my ass." T.S. had to call the Captain to get Mr. Ramos Sosa to comply. Refusing to follow a superior officer's orders is a fireable offense.

9.      When T.S. attempted to explain the situation, Captain Stith put his hand in her face and said, "No. Not your turn." He then asked Mr. Ramos Sosa to comply with T.S.'s orders "for him." Mr. Ramos Sosa at first refused, but the Captain eventually talked him into it. Again, refusing a superior officer's orders should have come with some form of discipline, but Mr. Ramos Sosa was allowed to go on with his work as usual.

10.     When T.S. reported Mr. Ramos Sosa's ongoing behavior to Captain Stith later that day, he responded that she should not have talked about being gay. He said, explicitly, that Mr. Ramos Sosa had a problem with her being a "young gay female." He ordered her never to talk about her personal life again, and discouraged her from calling HR so he could have more time to "change [Mr. Ramos Sosa's] mind about homophobia." He refused to switch her shift so she could get away from her harasser.

**COMPLAINT FOR DAMAGES -** Page 4 of 10

11.    Almost immediately after this conversation, the Captain asked Mr. Ramos Sosa about his girlfriend in front of T.S. It was clear that the rule was not "don't talk about your relationships," but rather, "don't talk about being gay."

12.    On January 3, 2019, T.S. observed Mr. Ramos Sosa writing in a journal for 45 minutes and not fulfilling his duties, including not updating the ship's heading. Being on watch is like being a lifeguard; any activity that would take your eyes off of the water is strictly prohibited, for safety reasons. When T.S. asked him to please stop writing, he responded, "Do you think I give a shit what you say?" T.S. called the Captain to intervene.

13.    When Captain Stith arrived on the bridge, he did not allow T.S. to explain, but instead ordered her to go to her room and stay in there until he released her. The Captain kept her in her room for 9 hours.

14.    For the first 20 minutes of being confined to her room, T.S.'s intra-ship phone line appeared to be disabled. She asked Captain Stith if she could use the ship's satellite phone to call HR.

15.    When she got in touch with HR at around 9:30 am, the HR representative said they would not pay to fly her home until the HR investigation was complete. This could have been months.

16.    T.S. was terrified, and wanted to leave the ship immediately. She sent HR her notes on the situation, ending with: "Please help me."

17.    At 11:00 am, the Captain came by T.S.'s cabin and told her he felt like he "let her down." However, he did not release her from her room.

18.    At 4:00 pm, T.S. asked if she could go to work. The Captain said he didn't know yet.

Lavender Rights Project
1004 MLK Way, Tacoma, WA 98405
P: (206) 639-7955 F: (206) 374-2853

19.     While she was confined to her room, she missed the opportunity to do overtime work from 1:00 to 5:00 pm.

20.     At 6:00 pm, the Captain called T.S. and told her he was going to let her go back to work for the night's watch shift with a different Able Bodied Seaman, Cole Linnell.

21.     At 9:00 pm, the Captain accused T.S. of missing an inspection. T.S. explained that this specific inspection wasn't part of her duties, but she was willing to take it on in the future. The Captain agreed, but then told T.S. that he had actually already done this inspection on December 28, 2018. T.S. found it strange that the Captain had accused her of forgetting about a task that was not assigned to her and that he had already completed 6 days prior.

22.     After experiencing mistreatment by both the AB and the Captain, T.S. started keeping her room locked because she was afraid someone would take or tamper with the log that she was keeping.

23.     The next day, when she went to the galley to order breakfast, she saw Mr. Ramos Sosa and did not feel comfortable being in the same room as him. She was astounded that he had not been sent home for his harassment against her, and began to realize that no one on the ship had her back. She started taking all her meals back to her room.

24.     That morning, the Captain shadowed T.S. on her watch, scrutinizing her work for mistakes. To T.S.'s knowledge, the Captain did not shadow any other employees in this way.

25.     At 3:30 pm, T.S. was instructed to walk around the deck to look for something to do. She felt fearful of running into Mr. Ramos Sosa while alone on the deck.

26.     At 4:00 pm, she asked the Captain if she could use the satellite phone to call her union representative because she was feeling unsafe.

**COMPLAINT FOR DAMAGES -** Page 6 of 10

Lavender Rights Project
1004 MLK Way, Tacoma, WA 98405
P: (206) 639-7955 F: (206) 374-2853

27.     The Captain pressured T.S. to explain, again, why she felt unsafe. When she did, he became defensive, and refused to do anything.

28.     In her logs from this time, T.S. describes the "mental torture" she was going through because she was fearful of retaliation from both Mr. Ramos Sosa and the Captain.

29.     At 6:00 pm, T.S. again talked to the Captain about her safety concerns. This time, he said she would not have to work with Mr. Ramos Sosa anymore. T.S. did not trust him or feel that the issue was truly resolved.

30.     On January 5, T.S. woke up feeling, in her own words, "uncomfortable and emotionally exhausted/crying from feeling so continuously distraught, isolated, fearful of retaliation/targeting, and feeling unsafe."

31.     The ship arrived in Puerto Rico. T.S. called HR and pleaded with them to help her get off of the ship immediately. HR changed their tune, and offered to fly her to Florida the next day. They said this was because she had said the specific words, "I feel unsafe," that they were able to fly her back to the U.S. This was confusing to T.S., as she had been communicating her fear for her safety since the last incident, and had sent them her entire log of the harassment incidents.

32.     Later that day, T.S. talked to Mr. Voss and told him everything that had been going on. Mr. Voss responded, "I hope one day, as you get older, that you can see this from the Captain's side, and know how much he has going on, and how nice it is for him to be focusing on dealing with you."

33.     On the morning of January 6, 2019, T.S. volunteered to take the watch shift until noon, even though she was about to leave the ship and was not obligated to do this. During this shift, Mr. Voss called T.S. out on the radio for failing to unplug a refrigerated container from the

deck. Unplugging this container was not T.S.'s responsibility, and this call-out was another contrived and baseless reprimand, just like the Captain accusing her of missing an inspection. It was clear that Captain Stith and Mr. Voss were looking for reasons to get T.S. in trouble.

34.    Later that day, T.S. flew from Puerto Rico to Florida, and met with HR to discuss her treatment on the ship. During this conversation, HR suggested that T.S., a gay woman, had been in a sexual relationship with Mr. Ramos Sosa, and asked if she had ever sexually harassed him. HR told T.S. that it would take six weeks for them to conclude their investigation, but that she was "welcome to return to the ship at any time."

37.    Unable to go back to the incredibly hostile work environment with no changes made, T.S. sent in her resignation on February 28th, 2019.

38.    T.S. was constructively discharged after enduring homophobic and sexist harassment from her AB and the Captain. The Captain not only participated in the harassment, but also negligently refused to manage the AB's behavior or follow anti-harassment procedures. T.S. had to flee the ship, whereas Mr. Ramos Sosa was able to carry on with his career.

40.    T.S. has suffered greatly since being forced out of the industry. She was working as a waitress, then as a bartender, and is now unemployed. She does not feel safe returning to the shipping industry at all, which is significant because she spent considerable time and money on education in this field, having graduated from the California Maritime Academy with a BS in marine transportation, minor in law, and simultaneously earned the US Coast Guard Unlimited Tonnage 3rd Mate License.

41.    Furthermore, T.S. can no longer access the $2,793.69 in her AMO Pension plan, which she would have had access to if she had worked 100 days at sea in 2019.

Lavender Rights Project
1004 MLK Way, Tacoma, WA 98405
P: (206) 639-7955 F: (206) 374-2853

42.     T.S. has been diagnosed with PTSD from the events that transpired on the TOTE vessel. She has experienced trauma flashbacks, vomiting, fainting, recurring nightmares, insomnia, hyper vigilance, hair pulling, vertigo, and headaches. She had to go to the ER on one occasion after fainting during a particularly bad flashback.

## IV.     CAUSES OF ACTION

The above paragraphs are herein incorporated by this reference.

1. **Discrimination:** Defendants, by and through their actions and/or omissions, discriminated against Plaintiff T.S. on the basis of her sex and sexual orientation in violation of RCW 49.60.

2. **Harassment:** Defendants, by and through their actions and/or omissions, harassed Plaintiff T.S. because of her sex and sexual orientation in violation of RCW 49.60 and WAC 162-32-040.

3. **Intentional Infliction of Emotional Distress:**  Defendants, by and through their actions and/or omissions, intentionally inflicted emotional distress upon Plaintiff T.S. in violation of RCW 49.60.

4. **Negligent Infliction of Emotional Distress:**  Defendants, by and through their actions and/or omissions, negligently inflicted emotional distress upon Plaintiff T.S. in violation of RCW 49.60.

5.  **Constructive Discharge:** The conduct, acts and omissions of Defendants were the proximate cause of Plaintiff's resignation from employment with TOTE, and constitute constructive discharge in violation of RCW 49.60.

6. **Maintenance and Cure:** Plaintiff is entitled to compensation under the common law duty of a ship owner to provide maintenance and cure.

Lavender Rights Project
1004 MLK Way, Tacoma, WA 98405
P: (206) 639-7955 F: (206) 374-2853

**7. Other Claims:** Plaintiff reserves the right to conduct discovery into alternative claims and additional defendants and to amend these charges as necessary.

## VII. PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment against Defendants as follows:

1. That the Plaintiff be awarded damages for humiliation, personal indignity, embarrassment, fear, sadness, anger, anxiety, anguish and other forms of emotional distress she has experienced, in an amount to be proven at trial;

2. That Plaintiff be awarded lost wages stemming from the constructive discharge;

3. That the Plaintiff be awarded pre- and post- judgment interest to the extent authorized by law;

4. That Plaintiff be awarded compensation for the medical care needed to treat the psychological injuries inflicted aboard the vessel, as well as day-to-day living expenses, until she is fit for duty, or until she has reached a point where additional medical treatment will not help her;

5. That Plaintiff be awarded all other actual damages;

6. That Plaintiff be awarded his reasonable attorney's fees and costs; and

7. That Plaintiff be awarded such other relief as the Court deems just and proper.

DATED January 28, 2021.

Lavender Rights Project, by:

_____

Morgan Mentzer, WSBA #47483
Attorney for Plaintiff T.S.

**COMPLAINT FOR DAMAGES -** Page 10 of 10

ØŠÒÖ
GŒGFÁ¿ÒÖÓ/GÍ ÁFŒ¼Í JÁÚT
SŒ Ô/Å̂ÛWÞ VÝ̂
ÙÛÚ̂Û̂Œ̂Û̂Å̂ÛWÜ̂V̂Å̂ÒŠ̂Ò̂Û̂S
Ò̂ẐŠÒÖ
Ô̂ŒÛ̂Ò̂Å̂ŴÁ̂ŒFÍ̂Ò̂ŒÌ̂FFÌ̂Ä̂Ù̂Ò̂Œ

## IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
## FOR THE COUNTY OF KING

| | |
|---|---|
| T.S. | NO. 21-2-02611-3 SEA |
| Plaintiff(s) | ORDER SETTING CIVIL CASE SCHEDULE |
| vs | ASSIGNED JUDGE: NORTH, Dept. 30 |
| AND EFREN RAMOS SOSA TOTE, INC., TOTE SERVICES, LLC, KEVIN STITH | |
| Defendant(s) | FILED DATE: 02/25/2021<br>TRIAL DATE:02/22/2022 |

A civil case has been filed in the King County Superior Court and will be managed by the Case Schedule on Page 3 as ordered by the King County Superior Court Presiding Judge.

### I. NOTICES

**NOTICE TO PLAINTIFF:** The Plaintiff may serve a copy of this **Order Setting Case Schedule (*Schedule*)** on the Defendant(s) along with the ***Summons and Complaint/Petition***.  Otherwise, the Plaintiff shall serve the *Schedule* on the Defendant(s) within 10 days after the later of: (1) the filing of the ***Summons and Complaint/Petition*** or (2) service of the Defendant's first response to the ***Complaint/Petition***, whether that response is a ***Notice of Appearance***, a response, or a Civil Rule 12 (CR 12) motion.  The ***Schedule*** may be served by regular mail, with proof of mailing to be filed promptly in the form required by Civil Rule 5 (CR 5).

**NOTICE TO ALL PARTIES:**
All attorneys and parties should make themselves familiar with the King County Local Rules [*KCLCR*] -- especially those referred to in this ***Schedule***. In order to comply with the ***Schedule***, it will be necessary for attorneys and parties to pursue their cases vigorously from the day the case is filed. For example, discovery must be undertaken promptly in order to comply with the deadlines for joining additional parties, claims, and defenses, for disclosing possible witnesses [*See KCLCR 26*], and for meeting the discovery cutoff date [*See KCLCR 37(g)*].
      **You are required to give a copy of these documents to all parties in this case.**

3

**I. NOTICES (continued)**

**CROSSCLAIMS, COUNTERCLAIMS AND THIRD PARTY COMPLAINTS:**
A filing fee of **$240** must be paid when any answer that includes additional claims is filed in an existing case.

**KCLCR 4.2(a)(2)**
A Confirmation of Joinder, Claims and Defenses or a Statement of Arbitrability must be filed by the deadline in the schedule.  The court will review the confirmation of joinder document to determine if a hearing is required.  If a Show Cause order is issued, all parties cited in the order must appear before their Chief Civil Judge.

**PENDING DUE DATES CANCELED BY FILING PAPERS THAT RESOLVE THE CASE:**
When a final decree, judgment, or order of dismissal of <u>all parties and claims</u> is filed with the Superior Court Clerk's Office, and a courtesy copy delivered to the assigned judge, all pending due dates in this *Schedule* are automatically canceled, including the scheduled Trial Date. It is the responsibility of the parties to 1) file such dispositive documents within 45 days of the resolution of the case, and 2) strike any pending motions by notifying the bailiff to the assigned judge.

 Parties may also authorize the Superior Court to strike all pending due dates and the Trial Date by filing a *Notice of Settlement* pursuant to KCLCR 41, and forwarding a courtesy copy to the assigned judge. If a final decree, judgment or order of dismissal of <u>all parties and claims</u> is not filed by 45 days after a *Notice of Settlement*, the case may be dismissed with notice.

**If you miss your scheduled Trial Date**, the Superior Court Clerk is authorized by KCLCR 41(b)(2)(A) to present an *Order of Dismissal*, without notice, for failure to appear at the scheduled Trial Date.

**NOTICES OF APPEARANCE OR WITHDRAWAL AND ADDRESS CHANGES:**
*All parties to this action must keep the court informed of their addresses.* When a Notice of Appearance/Withdrawal or Notice of Change of Address is filed with the Superior Court Clerk's Office, parties must provide the assigned judge with a courtesy copy.

 **ARBITRATION FILING <u>AND</u> TRIAL DE NOVO POST ARBITRATION FEE:**
A Statement of Arbitrability must be filed by the deadline on the schedule **if the case is subject to mandatory arbitration** and service of the original complaint and all answers to claims, counterclaims and cross-claims have been filed.  If mandatory arbitration is required after the deadline, parties must obtain an order from the assigned judge transferring the case to arbitration. **Any party filing a Statement must pay a $250 arbitration fee**. If a party seeks a trial de novo when an arbitration award is appealed, a fee of $400 and the request for trial de novo must be filed with the Clerk's Office Cashiers.

**NOTICE OF NON-COMPLIANCE FEES:**
**All** parties will be assessed a fee authorized by King County Code 4A.630.020 whenever the Superior Court Clerk must send notice of non-compliance of schedule requirements <u>and/or</u> Local Civil Rule 41.

**King County Local Rules are available for viewing at <u>www.kingcounty.gov/courts/clerk.</u>**

## II. CASE SCHEDULE

| * | CASE EVENT | EVENT DATE |
|---|---|---|
|  | Case Filed and Schedule Issued. | 02/25/2021 |
| * | Last Day for Filing Statement of Arbitrability without a Showing of Good Cause for Late Filing [*See KCLMAR 2.1(a) and Notices on Page 2*]. **$220 arbitration fee must be paid** | 08/05/2021 |
| * | **DEADLINE** to file Confirmation of Joinder if not subject to Arbitration [*See KCLCR 4.2(a) and Notices on Page 2*]. | 08/05/2021 |
|  | **DEADLINE** for Hearing Motions to Change Case Assignment Area [*KCLCR 82(e)*]. | 08/19/2021 |
|  | **DEADLINE** for Disclosure of Possible Primary Witnesses [*See KCLCR 26(k)*]. | 09/21/2021 |
|  | **DEADLINE** for Disclosure of Possible Additional Witnesses [*See KCLCR 26(k)*]. | 11/02/2021 |
|  | **DEADLINE** for Jury Demand [*See KCLCR 38(b)(2)*]. | 11/16/2021 |
|  | **DEADLINE** for a Change in Trial Date [*See KCLCR 40(e)(2)*]. | 11/16/2021 |
|  | **DEADLINE** for Discovery Cutoff [*See KCLCR 37(g)*]. | 01/04/2022 |
|  | **DEADLINE** for Engaging in Alternative Dispute Resolution [*See KCLCR 16(b)*]. | 01/25/2022 |
|  | **DEADLINE**: Exchange Witness & Exhibit Lists & Documentary Exhibits [*KCLCR 4(j)*]. | 02/01/2022 |
| * | **DEADLINE** to file Joint Confirmation of Trial Readiness [*See KCLCR 16(a)(1)*] | 02/01/2022 |
|  | **DEADLINE** for Hearing Dispositive Pretrial Motions [*See KCLCR 56; CR 56*]. | 02/08/2022 |
| * | Joint Statement of Evidence [*See KCLCR 4 (k)*] | 02/15/2022 |
|  | **DEADLINE** for filing Trial Briefs, Proposed Findings of Fact and Conclusions of Law and Jury Instructions (Do not file proposed Findings of Fact and Conclusions of Law with the Clerk) | 02/15/2022 |
|  | Trial Date [*See KCLCR 40*]. | 02/22/2022 |

The * indicates a document that must be filed with the Superior Court Clerk's Office by the date shown.

## III. ORDER

Pursuant to King County Local Rule 4 [*KCLCR 4*], IT IS ORDERED that the parties shall comply with the schedule listed above.  Penalties, including but not limited to sanctions set forth in Local Rule 4(g) and Rule 37 of the Superior Court Civil Rules, may be imposed for non-compliance.  It is FURTHER ORDERED that the party filing this action **must** serve this *Order Setting Civil Case Schedule* and attachment on all other parties.


DATED:   <u>02/25/2021</u>

_____
PRESIDING JUDGE

3

## IV. ORDER ON CIVIL PROCEEDINGS FOR ASSIGNMENT TO JUDGE

**READ THIS ORDER BEFORE CONTACTING YOUR ASSIGNED JUDGE.**
This case is assigned to the Superior Court Judge whose name appears in the caption of this case schedule.  The assigned Superior Court Judge will preside over and manage this case for all pretrial matters.

**COMPLEX LITIGATION:**  If you anticipate an unusually complex or lengthy trial, please notify the assigned court as soon as possible.

**APPLICABLE RULES:**  Except as specifically modified below, all the provisions of King County Local Civil Rules 4 through 26 shall apply to the processing of civil cases before Superior Court Judges.  The local civil rules can be found at www.kingcounty.gov/courts/clerk/rules/Civil.

**CASE SCHEDULE AND REQUIREMENTS:**  Deadlines are set by the case schedule, issued pursuant to Local Civil Rule 4.

**THE PARTIES ARE RESPONSIBLE FOR KNOWING AND COMPLYING WITH ALL DEADLINES IMPOSED BY THE COURT'S LOCAL CIVIL RULES.**

### A. Joint Confirmation regarding Trial Readiness Report
No later than twenty one (21) days before the trial date, parties shall complete and file (with a copy to the assigned judge) a joint confirmation report setting forth whether a jury demand has been filed, the expected duration of the trial, whether a settlement conference has been held, and special problems and needs (e.g., interpreters, equipment).

The Joint Confirmation Regarding Trial Readiness form is available at www.kingcounty.gov/courts/scforms. If parties wish to request a CR 16 conference, they must contact the assigned court.  Plaintiff's/petitioner's counsel is responsible for contacting the other parties regarding the report.

### B. Settlement/Mediation/ADR
a. Forty five (45) days before the trial date, counsel for plaintiff/petitioner shall submit a written settlement demand.  Ten (10) days after receiving plaintiff's/petitioner's written demand, counsel for defendant/respondent shall respond (with a counter offer, if appropriate).

b. Twenty eight (28) days before the trial date, a Settlement/Mediation/ADR conference shall have been held.  FAILURE TO COMPLY WITH THIS SETTLEMENT CONFERENCE REQUIREMENT MAY RESULT IN SANCTIONS.

### C. Trial
Trial is scheduled for 9:00 a.m. on the date on the case schedule or as soon thereafter as convened by the court.  The Friday before trial, the parties should access the court's civil standby calendar on the King County Superior Court website www.kingcounty.gov/courts/superiorcourt to confirm the trial judge assignment.

## MOTIONS PROCEDURES

### A. Noting of Motions

**Dispositive Motions:**  All summary judgment or other dispositive motions will be heard with oral argument before the assigned judge.  The moving party must arrange with the hearing judge a date and time for the hearing, consistent with the court rules.  Local Civil Rule 7 and Local Civil Rule 56 govern procedures for summary judgment or other motions that dispose of the case in whole or in part.  The local civil rules can be found at www.kingcounty.gov/courts/clerk/rules/Civil.

**Non-dispositive Motions:**  These motions, which include discovery motions, will be ruled on by the assigned judge without oral argument, unless otherwise ordered.  All such motions must be noted for a date by which the ruling is requested; this date must likewise conform to the applicable notice requirements.  Rather than noting a time of day, the Note for Motion should state "Without Oral Argument."  Local Civil Rule

3

7 governs these motions, which include discovery motions.  The local civil rules can be found at www.kingcounty.gov/courts/clerk/rules/Civil.

**Motions in Family Law Cases not involving children:** Discovery motions to compel, motions in limine, motions relating to trial dates and motions to vacate judgments/dismissals shall be brought before the assigned judge.  All other motions should be noted and heard on the Family Law Motions calendar.  Local Civil Rule 7 and King County Family Law Local Rules govern these procedures.  The local rules can be found at www.kingcounty.gov/courts/clerk/rules.

**Emergency Motions:**   Under the court's local civil rules, emergency motions will usually be allowed only upon entry of an Order Shortening Time.  However, some emergency motions may be brought in the Ex Parte and Probate Department as expressly authorized by local rule.  In addition,  discovery disputes may be addressed by telephone call and without written motion, if the judge approves in advance.

**B.  Original Documents/Working Copies/ Filing of Documents:  All original documents must be filed with the Clerk's Office.**  Please see information on the Clerk's Office website at www.kingcounty.gov/courts/clerk regarding the requirement outlined in LGR 30 that attorneys must e-file documents in King County Superior Court.  The exceptions to the e-filing requirement are also available on the Clerk's Office website. The local rules can be found at www.kingcounty.gov/courts/clerk/rules.

The working copies of all documents in support or opposition must be marked on the upper right corner of the first page with the date of consideration or hearing and the name of the assigned judge.  The assigned judge's working copies must be delivered to his/her courtroom or the Judges' mailroom.  Working copies of motions to be heard on the Family Law Motions Calendar should be filed with the Family Law Motions Coordinator.  Working copies can be submitted through the Clerk's office E-Filing application at www.kingcounty.gov/courts/clerk/documents/eWC.

**Service of documents:** Pursuant to Local General Rule 30(b)(4)(B), e-filed documents shall be electronically served through the e-Service feature within the Clerk's eFiling application.  Pre-registration to accept e-service is required.  E-Service generates a record of service document that can be e-filed.  Please see the Clerk's office website at www.kingcounty.gov/courts/clerk/documents/efiling regarding E-Service.

**Original Proposed Order:** Each of the parties must include an original proposed order granting requested relief with the working copy materials submitted on any motion.  **Do not file the original of the proposed order with the Clerk of the Court**.   Should any party desire a copy of the order as signed and filed by the judge, a pre-addressed, stamped envelope shall accompany the proposed order.  The court may distribute orders electronically.  Review the judge's website for information: www.kingcounty.gov/courts/SuperiorCourt/judges.

**Presentation of Orders for Signature:** All orders must be presented to the assigned judge or to the Ex Parte and Probate Department, in accordance with Local Civil Rules 40 and 40.1. Such orders, if presented to the Ex Parte and Probate Department, shall be submitted through the E-Filing/Ex Parte via the Clerk application by the attorney(s) of record. E-filing is not required for self-represented parties (non-attorneys). If the assigned judge is absent, contact the assigned court for further instructions.  If another judge enters an order on the case, counsel is responsible for providing the assigned judge with a copy.

**Proposed orders finalizing settlement and/or dismissal by agreement of all parties shall be presented to the  Ex Parte and Probate Department.**  Such orders shall be submitted through the E-Filing/Ex Parte via the Clerk application by the attorney(s) of record. E-filing is not required for self-represented parties (non-attorneys). Formal proof in Family Law cases must be scheduled before the assigned judge by contacting the bailiff, or formal proof may be entered in the Ex Parte Department.  **If final order and/or formal proof are entered in the Ex Parte and Probate Department, counsel is responsible for providing the assigned judge with a copy.**

**C. Form**
Pursuant to Local Civil Rule 7(b)(5)(B), the initial motion and opposing memorandum shall not exceed 4,200 words and reply memoranda shall not exceed 1,750 words without authorization of the court. The word count

includes all portions of the document, including headings and footnotes, except 1) the caption; 2) table of contents and/or authorities, if any; and 3): the signature block. Over-length memoranda/briefs and motions supported by such memoranda/briefs may be stricken.

***IT IS SO ORDERED.  FAILURE TO COMPLY WITH THE PROVISIONS OF THIS ORDER MAY RESULT IN DISMISSAL OR OTHER SANCTIONS.  PLAINTIFF/PEITITONER SHALL FORWARD A COPY OF THIS ORDER AS SOON AS PRACTICABLE TO ANY PARTY WHO HAS NOT RECEIVED THIS ORDER.***

_____
PRESIDING JUDGE

FILED
2021 FEB 25 12:59 PM
KING COUNTY
SUPERIOR COURT CLERK
E-FILED
CASE #: 21-2-02611-3 SEA

**IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON**
**FOR THE COUNTY OF KING**

| | |
|---|---|
| T.S. | No. 21-2-02611-3  SEA |
| vs | **CASE INFORMATION COVER SHEET AND AREA DESIGNATION** |
| | (CICS) |
| TOTE, Inc., TOTE Services, LLC, Kevin Stith | |

**CAUSE OF ACTION**

MSC - Miscellaneous

**AREA OF DESIGNATION**

SEA        Defined as all King County north of Interstate 90 and including all of Interstate 90 right of way, all of the cities of Seattle, Mercer Island, Issaquah, and North Bend, and all of Vashon and Maury Islands.

FILED
2021 FEB 25 12:59 PM
KING COUNTY
SUPERIOR COURT CLERK
E-FILED
CASE #: 21-2-02611-3 SEA

## SUPERIOR COURT OF WASHINGTON
## FOR KING COUNTY

| | |
|---|---|
| T.S.,<br><br>                   Plaintiff,<br><br>          v.<br><br>TOTE, Inc., TOTE Services, LLC, Kevin Stith, and Efren Ramos Sosa,<br>                   Defendants. | No.<br><br>**SUMMONS** |

TO TOTE, Inc., TOTE Services, LLC, Kevin Stith, and Efren Ramos Sosa:

A lawsuit has been started against you in the Superior Court of Washington, King County, by T.S. ("Plaintiff"). Plaintiff's claim is stated in the written Complaint, a copy of which is served upon you with this Summons.

In order to defend against this lawsuit, you must respond to the Complaint by stating your defense in writing, and serve a copy upon the undersigned attorney for Plaintiff within twenty (20) days after the service of this Summons, excluding the date of service, or a default judgment may be entered against you without notice. A default judgment is one where Plaintiff is entitled to what they ask for because you have not responded. If you serve a notice of

**SUMMONS -** Page 1 of 2

appearance on the undersigned attorney, you are entitled to notice before a default judgment may be entered.

You may demand that the Plaintiff file this lawsuit with the court. If you do so, the demand must be in writing and must be served upon the person signing this Summons. Within fourteen (14) days after you serve the demand, the Plaintiff must file this lawsuit with the court, or the service on you of this Summons and Complaint will be void.

If you wish to seek the advice of an attorney in this matter, you should do so promptly so that your written response, if any, may be served on time.

THIS SUMMONS is issued pursuant to Rule 4 of the Superior Court Civil Rules of the State of Washington.


DATED January 28, 2021.

Lavender Rights Project, by:



_____        _____
Morgan Mentzer, WSBA #47483
Attorney for Plaintiff T.S.

**Lavender Rights Project**
1004 MLK Way, Tacoma, WA 98405
P: (206) 639-7955 F: (206) 374-2853

ØŠÒÒ
GŒGFÁ̈ÒÒÁ̈GÁ̈FGKJÁÚT
SŒŎÁ̈UWŀVÝ
ÙWÚÒÜŒJÜÁ̈ÜWÜVÁ̈ŠÒÜS
ÒŠŠÒÒ
ÔŒŪÒÁ̈ŇKŒFĚŒGŤFFĚĤÙŎŒ

---

## SUPERIOR COURT
## KING COUNTY, WASHINGTON

| | |
|---|---|
| T.S.,<br><br>     Plaintiff,<br><br>  v.<br><br>TOTE, Inc., TOTE Services, LLC, Kevin Stith, and Efren Ramos Sosa,<br>     Defendants. | NO:<br><br><br>MOTION FOR USE OF INITIALS |

**I.**   **Relief Requested.**

 COMES NOW the Plaintiff, by and through her attorney of record, and respectfully requests the Court to use of the initials of her name for the party name in this matter.  Plaintiff requests to use the following initials for this court matter: "T.S."

**II.**   **Statement of Facts.**

 The Plaintiff is a resident of Washington. She filed a discrimination case against the TOTE, Inc., TOTE Services, LLC, Kevin Stith, and Efren Ramos Sosa on 1/28/2021. Plaintiff has initiated this request to use initials within 60 days of filing the case. If the Plaintiff's name is publicly available, it would put her at risk for harassment, abuse and bias. The open administration

1

of justice will not be prejudiced by using the Plaintiff's initials instead of her name. The initials for Plaintiff's legal name are "T.S."

### III.    Statement of Issues.

At issue is whether Plaintiff's interest in using initials for her party name is appropriate for this type of proceeding.  Plaintiff is requesting the use of initials for this civil employment discrimination matter.  Plaintiff should be allowed to use initials for this case matter as is her right under local rules. Plaintiff's right to privacy outweighs any public interest in knowing her full name for this court matter. The local rules of King County Superior Court provide for the use of initials as per Order of Judge so long as it is requested within 60 days of the commencement of proceedings.  The request to use initials is analogous to a request to seal or redact case records in that is asks the Court to protect a private personal right over the public's right to know certain information.

### IV.    Evidence Relied Upon

The Plaintiff experienced discrimination based on her sex and sexual orientation as a mate on a commercial shipping vessel. The shipping industry significantly lacks equitable representation of women or LGBT individuals, and including the Plaintiff's full name will increase the likelihood of future discrimination and ostracization from other shipping companies when she seeks employment. Moreover, the Plaintiff has already faced hostility and intimidation as a result of her complaints to Human Resources about her treatment. Using only her initials will better protect her from future discrimination in the shipping industry.

2

Lavender Rights Project
1004 MLK Way,
Tacoma, WA 98405
Phone (206) 639-7955

1

## V.    Authority.

2

3        Plaintiff's request to use initials in lieu of her name meets the criteria set for sealing or

4   redacting case records. The Public Records Act of WA establishes an affirmative duty to disclose

5   public records unless the records fall within specific statutory exemptions. *Spokane Police Guild*

6   *v. Liquor Control Bd.*, 112 Wash.2d 30, 36 (1989).  The party attempting to avoid disclosure bears

7   the burden of proving an exemption applies. *Ameriquest Mortg. Co. v. Office of Att'y Gen.*, 177

8   Wash.2d 467, 486-87 (2013).  However, access to court records is not absolute and should be

9   consistent with reasonable expectations of personal privacy as provided by article I, section 7 of

10  the Washington State Constitution. This request to seal the records in question is consistent with

11  this Constitutional policy of protecting reasonable expectations of privacy and falls within the

12  statutory exemption of protected private health information.

13       Washington State General Rule 15 allows for the sealing of civil court records by request

14  of the party as does Local General Rule 15.  After a hearing on the motion to seal, the court may

15  order court files and records to be sealed if the court makes and enters written findings that the

16  specific sealing or redaction is justified by compelling privacy or safety concerns that outweigh

17  the public interest in access to the court record. GR 15(c). Here compelling circumstances exist

18  that require allowing the plaintiff to proceed anonymously in the court file as failure to do so

19  would result in the disclosure of personal information to the detriment of the Plaintiff. Nor would

20  redaction of the documents suffice to protect the information from disclosure as the entire file and

21  entire documents themselves would have to be redacted.

22

23

24

3

1    The request of this Plaintiff satisfies the elements required for sealing records: first, the

2    Plaintiff has demonstrated a legitimate need for a protective interest in sealing this record in order

3    to protect herself from future professional and person harm that results from the disclosures

4    currently included in the court record and the threat of disclosure of this vulnerable information

5    is serious and imminently threatens the Plaintiff's professional interests and personal safety;

6    second, the hearing to request the sealing of these records will provide opportunity for objections;

7    third, sealing the entire record will be the most effective means to protect the interests of the

8    Plaintiff that are being threatened; and fourth a redaction may be less restrictive but will not be

9    as effective as nearly all of the case record would need to be redacted including whole documents,

10   party names and the court matter title, and it is more effective and protective to seal the entire

11   case record; lastly, the interests of the public do not outweigh the interests of the Plaintiff in the

12   matter at hand. *Seattle Times Company vs Ishikawa,* 97 Wn.2d 30 (1982)  640 P.2d 716. There is

13   little need for the public to maintain record of an individual's name and sexual orientation.

14   Finally, this requested Order is for an indefinite duration as the Plaintiff's risk remains indefinite

15   if these records were to remain public.

**Conclusion**

The use of initials in lieu of party names is justified for the protection of the identity of

the individual whose private information is the subject of this action.  Accordingly, the Plaintiff

requests permission to use initials for her party name by Order of this Court.

DATED: February 25, 2021

Respectfully submitted,

4

1

2

_____

3
Morgan Mentzer, WSBA # 47483
Attorney for Plaintiff
4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

Lavender Rights Project
1004 MLK Way,
Tacoma, WA 98405
Phone (206) 639-7955

ꞏꞏꞏꞏꞏ

(garbled text)

**IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
IN AND FOR THE COUNTY OF KING**

| | |
|---|---|
| In re Matter of:<br><br>T.S.<br><br>Plaintiff,<br><br>&<br><br>TOTE, Inc., TOTE Services, LLC, Kevin Stith, and Efren Ramos Sosa<br><br>Defendants. | **CASE NO. 21-2-02611-3SEA**<br>**NOTICE OF COURT DATE (Judges)**<br>**(NOTICE FOR HEARING)**<br>**SEATTLE COURTHOUSE ONLY**<br>(Clerk's Action Required)    (NTHG) |

**TO:      THE CLERK OF THE COURT** and to all other parties per list on Page 2:
**PLEASE TAKE NOTICE** that an issue of law in this case will be heard on the date below and the Clerk is directed to note this issue on the calendar checked below.

**Calendar Date**: 3/5/2021_____ **Day of Week**: Friday_____

**Nature of Motion**: Motion to Use Initials_____

**CASES ASSIGNED TO INDIVIDUAL JUDGES – SEATTLE**
If oral argument on the motion is allowed (LCR 7(b)(2)), contact staff of assigned judge to schedule date and time before filing this notice. **Working Papers**: The judge's name, date and time of hearing <u>must</u> be noted in the upper right corner of the Judge's copy.   **Deliver Judge's copies to Judges' Mailroom at C-203**
[x]  Without oral argument (Mon - Fri)
[ ]  With oral argument Hearing            Date/Time:_____
         Judge's Name: North_____            Trial Date: 1/24/2022_____

**CHIEF CRIMINAL DEPARTMENT – SEATTLE (E-1201)**
[ ] Bond Forfeiture  3:15 pm, 2nd Thursday of each month
[ ] Extraordinary Writs from criminal or infraction (Show Cause Hearing) LCR 98.40(d)    3:00 p.m. Mon-Thurs.
[ ] Certificates of Rehabilitation- Weapon Possession (**Convictions from Limited Jurisdiction Courts**) 3:30 First Tues of each month

**CHIEF CIVIL DEPARTMENT – SEATTLE (Please report to W-928)**
*Deliver working copies to Judges' Mailroom, Room C-203.  In upper right corner of papers write "Chief Civil Department" or judge's name and date of hearing*
[ ] Extraordinary Writs (Show Cause Hearing) (LCR 98.40)  1:30 p.m. **Thurs/Fri**
[ ] Supplemental Proceedings/ Judicial Subpoenas  (1:30 pm **Thurs/Fri**)(LCR 69)
[ ] Motions to Consolidate with multiple judges assigned (LCR 42) (without oral argument) M-F
[ ] Structured Settlements   (1:30 pm **Thurs/Fri**)(LCR 40(2)(S))

**Non-Assigned Cases:**
[ ] Non-Dispositive Motions M-F (without oral argument).
[ ] Dispositive Motions and Revisions (1:30 pm **Thurs/Fri**).
[ ] Certificates of Rehabilitation (**Employment**) 1:30 pm **Thurs/Fri** (LR 40(a)(2)(B))

**You may list an address that is not your residential address where you agree to accept legal documents.**

Sign: _____ Print/Type Name: Morgan Mentzer _____

WSBA # 47483_____ (if attorney)    Attorney for: Plaintiff _____

Address: 1004 MLK Jr Way_____ City, State, Zip Tacoma, WA 98405_____

Telephone: (206) 639-7955 Email Address: morgan@lavenderrightsproject.org _____ Date: 2/25/2021

## DO NOT USE THIS FORM FOR FAMILY LAW OR EX PARTE MOTIONS.

| LIST NAMES AND SERVICE ADDRESSES FOR ALL NECESSARY PARTIES REQUIRING NOTICE |

Name_____        Name_____
Service Address:_____        Service Address:_____
City, State, Zip_____        City, State, Zip_____
WSBA# _____Atty. For:_____        WSBA# _____Atty. For:_____
Telephone #: _____        Telephone #: _____
Email Address: _____        Email Address: _____


Name_____        Name_____
Service Address:_____        Service Address:_____
City, State, Zip_____        City, State, Zip_____
WSBA# _____Atty. For:_____        WSBA# _____Atty. For:_____
Telephone #: _____        Telephone #: _____
Email Address: _____        Email Address: _____

## IMPORTANT NOTICE REGARDING CASES

Party requesting hearing must file motion & affidavits separately along with this notice. List the names, addresses and telephone numbers of all parties requiring notice (including GAL) on this page. Serve a copy of this notice, with motion documents, on all parties.

The original must be filed at the Clerk's Office not less than **six** court days prior to requested hearing date, except for Summary Judgment Motions (to be filed with Clerk 28 days in advance).

THIS IS ONLY A PARTIAL SUMMARY OF THE LOCAL RULES AND ALL PARTIES ARE ADVISED TO CONSULT WITH AN ATTORNEY.

The SEATTLE COURTHOUSE is in Seattle, Washington at 516 Third Avenue. The Clerk's Office is on the sixth floor, room E609. The Judges' Mailroom is Room C-203.

# IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
# IN AND FOR THE COUNTY OF KING

| In re Matter of:<br><br>T.S.<br><br>&<br><br>TOTE, Inc., TOTE Services, LLC, Kevin Stith, and Efren Ramos Sosa<br><br>Plaintiff,<br><br>Defendants. | **CASE NO. 21-2-02611-3 SEA**<br>**AMENDED NOTICE OF COURT**<br>**DATE (Judges)**<br>**(NOTICE FOR HEARING)**<br>**SEATTLE COURTHOUSE ONLY**<br>(Clerk's Action Required)    (NTHG) |
|---|---|

**TO:**      **THE CLERK OF THE COURT** and to all other parties per list on Page 2:
          **PLEASE TAKE NOTICE** that an issue of law in this case will be heard on the date below and the Clerk is directed to note this issue on the calendar checked below.

**Calendar Date**: 3/9/2021_____ **Day of Week**: Tuesday_____

**Nature of Motion**: Motion to Use Initials _____

| **CASES ASSIGNED TO INDIVIDUAL JUDGES – SEATTLE** |
|---|
| If oral argument on the motion is allowed (LCR 7(b)(2)), contact staff of assigned judge to schedule date and time before filing this notice. **Working Papers**: The judge's name, date and time of hearing <u>must</u> be noted in the upper right corner of the Judge's copy.   **Deliver Judge's copies to Judges' Mailroom at C-203** |
| [x]  Without oral argument (Mon - Fri) |
| [ ]  With oral argument Hearing          Date/Time:_____ |
|         Judge's Name: North _____           Trial Date: 1/24/2022_____ |

| **CHIEF CRIMINAL DEPARTMENT – SEATTLE (E-1201)** |
|---|
| [ ] Bond Forfeiture  3:15 pm, 2nd Thursday of each month |
| [ ] Extraordinary Writs from criminal or infraction (Show Cause Hearing) LCR 98.40(d)    3:00 p.m. Mon-Thurs. |
| [ ] Certificates of Rehabilitation- Weapon Possession (**Convictions from Limited Jurisdiction Courts**) 3:30 First Tues of each month |

| **CHIEF CIVIL DEPARTMENT – SEATTLE (Please report to W-928)** |
|---|
| ***Deliver working copies to Judges' Mailroom, Room C-203**.  In upper right corner of papers write "Chief Civil Department" or judge's name and date of hearing* |
| [ ] Extraordinary Writs (Show Cause Hearing) (LCR 98.40)  1:30 p.m. **Thurs/Fri** |
| [ ] Supplemental Proceedings/ Judicial Subpoenas   (1:30 pm **Thurs/Fri**)(LCR 69) |
| [ ] Motions to Consolidate with multiple judges assigned (LCR 42) (without oral argument) M-F |
| [ ] Structured Settlements   (1:30 pm **Thurs/Fri**)(LCR 40(2)(S)) |

| **Non-Assigned Cases:** |
|---|
| [ ] Non-Dispositive Motions M-F (without oral argument). |
| [ ] Dispositive Motions and Revisions (1:30 pm **Thurs/Fri**). |
| [ ] Certificates of Rehabilitation (**Employment**) 1:30 pm **Thurs/Fri** (LR 40(a)(2)(B)) |

**You may list an address that is not your residential address where you agree to accept legal documents.**

Sign: _____ Print/Type Name: Morgan Mentzer _____

WSBA # 47483_____ (if attorney)   Attorney for: Plaintiff_____

Address: 1004 MLK Jr Way_____ City, State, Zip Tacoma, WA 98405_____

Telephone: (206) 639-7955 Email Address: morgan@lavenderrightsproject.org_____ Date: 3/3/2021

## DO NOT USE THIS FORM FOR FAMILY LAW OR EX PARTE MOTIONS.

| LIST NAMES AND SERVICE ADDRESSES FOR ALL NECESSARY PARTIES REQUIRING NOTICE |

Name_____        Name_____

Service Address:_____        Service Address:_____

City, State, Zip_____        City, State, Zip_____

WSBA# _____Atty. For:_____        WSBA# _____Atty. For:_____

Telephone #: _____        Telephone #: _____

Email Address: _____        Email Address: _____

Name_____        Name_____

Service Address:_____        Service Address:_____

City, State, Zip_____        City, State, Zip_____

WSBA# _____Atty. For:_____        WSBA# _____Atty. For:_____

Telephone #: _____        Telephone #: _____

Email Address: _____        Email Address: _____

## IMPORTANT NOTICE REGARDING CASES

Party requesting hearing must file motion & affidavits separately along with this notice.  List the names, addresses and telephone numbers of all parties requiring notice (including GAL) on this page.  Serve a copy of this notice, with motion documents, on all parties.

The original must be filed at the Clerk's Office not less than **six** court days prior to requested hearing date, except for Summary Judgment Motions (to be filed with Clerk 28 days in advance).

THIS IS ONLY A PARTIAL SUMMARY OF THE LOCAL RULES AND ALL PARTIES ARE ADVISED TO CONSULT WITH AN ATTORNEY.

The SEATTLE COURTHOUSE is in Seattle, Washington at 516 Third Avenue.  The Clerk's Office is on the sixth floor, room E609.  The Judges' Mailroom is Room C-203.

1
2
3
4
5

6

## SUPERIOR COURT
## COUNTY, WASHINGTON

7

8    In re Matter of:                          NO: 21-2-02611-3 SEA

9    T.S.

     Plaintiff,                                ORDER FOR USE OF INTIALS

10   &

11   TOTE, Inc., TOTE Services, LLC, Kevin Stith, and
     Efren Ramos Sosa

12
                                    Defendants.
13

14   I. FINDINGS

15   T.S. is a gay woman who has been employed aboard ship.

16   She has felt threatened by members of the ship's

17   crew because of her sexual orientation. Her interest

18   in her physical safety outweighs the public's interest

19   in knowing her name as part of this court action.

     II. ORDER
20

     The Plaintiff may file the Complaint using her initials.
21

22

23

24

Lavender Rights Project
1004 MLK Jr Way
Tacoma, WA 98405
Phone (206) 639-7955

Dated: _March 9, 2021_

_Douglass A. North_
Judge

Presented By:

Morgan Mentzer, WSBA No.
Lavender Rights Project
Attorney for Plaintiff

2

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

**SUPERIOR COURT OF WASHINGTON**
**FOR KING COUNTY**

T.S.,

     Plaintiff,

  v.

TOTE Services, LLC,

     Defendants.

No. 21-2-02611-3 SEA

**AMENDED COMPLAINT FOR
DAMAGES**

---

COMES NOW the Plaintiff T.S. and complains of TOTE Services, LLC, as well as associated, predecessor and successor entities, (hereinafter, "TOTE"):

## I.  PRELIMINARY STATEMENT

In this suit, T.S., a gay woman, challenges the unlawful treatment she suffered while employed as a Third Mate aboard the TOTE vessel M/V Perla Del Caribe. T.S. was subjected to homophobic harassment and thinly veiled threats by Able-Bodied Seaman Efren Ramos Sosa during their daily watch shifts together. When she brought the issue to the Captain, Kevin Stith, he excused Ramos Sosa's behavior, forbade T.S. to talk about being gay, discouraged her from calling HR, and then ordered her to stay in her cabin for nine hours. No action was taken by Captain Stith or TOTE to protect the Plaintiff. T.S. fled the M/V Perla Del Caribe as soon as HR agreed to fly her home.

After these traumatizing experiences, T.S.—who aspired to have a long career as a seaman—is fearful to the shipping industry out of fear for her safety. She has suffered great

Lavender Rights Project
1004 MLK Way, Tacoma, WA 98405
P: (206) 639-7955 F: (206) 374-2853

financial and emotional losses, and continues to experience medical problems due to the effects of the trauma.

## II.    PARTIES, JURISDICTION, AND VENUE

1. Plaintiff resides in Seattle, Washington. She was at all times material to this action a resident of Kitsap County, Washington.

2. Defendant TOTE Services, LLC, is a Foreign Limited Liability Company doing business in in Federal Way, King County, Washington.

3. Defendant Kevin Stith was the Captain of the TOTE vessel where the events of this case took place, and is a resident of New Orleans.

4. Defendant Efren Ramos Sosa was an Able Bodied Seaman on the TOTE vessel where the events of this case took place, and is a resident of San Juan/Puerto Rico.

5. Jurisdiction is proper in King County Superior Court pursuant to RCW 2.08.010 and the "Savings to Suitors Clause," 28 U.S.C. § 1333(1).

6. Venue is proper in King County, Washington pursuant to RCW 4.12.025.

7. Plaintiff has obtained proper service of process on Defendants.

## III.    FACTUAL ALLEGATIONS

1. T.S. was hired on December 6, 2018, as a Third Officer on the M/V Perla Del Caribe. She reported to Captain Kevin Stith, and worked daily with Able-Bodied Seaman Efren Ramos Sosa.

2. T.S. took measures to keep her personal life private and to ward off sexism and homophobia from coworkers. T.S. wore a fake wedding ring, and kept quiet about her sexual

Lavender Rights Project
1004 MLK Way, Tacoma, WA 98405
P: (206) 639-7955 F: (206) 374-2853

orientation. T.S. anticipated that men on the ship would react badly if they knew she was gay because of the sexist and homophobic culture that she had experienced under Captain Stith on a previous hitch and in the industry at large.

2.      T.S. and Mr. Ramos Sosa were scheduled to work the same watch shift. Mr. Ramos Sosa talked constantly about his girlfriend, including their sex life, while on watch with T.S. After two weeks of daily 4-hour watch shifts during which Mr. Ramos Sosa talked about his girlfriend, T.S. mentioned that she was also seeing a woman casually back home.

3.      As soon Mr. Ramos Sosa learned that T.S. was gay, his attitude towards her became openly hostile. Mr. Ramos Sosa refused to follow her orders, although she was his superior officer. When she would give him an order, he would frequently respond, "Fuck you, I'm not doing that."

4.      Between December 21st and 24th of 2018, Mr. Ramos Sosa made degrading comments to T.S. about how unimportant her job was, saying that she didn't know anything about shipping, and that he had more responsibility than her.

5.      Mr. Ramos Sosa also told T.S. that "all gays are faggots."

5.      On another occasion, Mr. Ramos Sosa told T.S. that he holds grudges against people, and that he had set a car on fire before to get revenge on someone who had "wronged him."

6.      T.S. reported the harassment and veiled threats to Chief Officer Douglas Voss on several occasions between December 24, 2018, and January 2, 2019, but insufficient steps were taken to address the behavior.

7.      T.S. remained professional and only engaged with Mr. Ramos Sosa when absolutely necessary. However, Mr. Ramos Sosa frequently refused to do his job, which T.S., as his supervisor, could not let slide.

Lavender Rights Project
1004 MLK Way, Tacoma, WA 98405
P: (206) 639-7955 F: (206) 374-2853

8.      On January 2, 2019, T.S. asked Mr. Ramos Sosa not to sit down on watch, as it was against the rules. He responded, "Hell no, you ain't going to do a power trip on my ass." T.S. had to call the Captain to get Mr. Ramos Sosa to comply. Refusing to follow a superior officer's orders is a fireable offense.

9.      When T.S. attempted to explain the situation, Captain Stith put his hand in her face and said, "No. Not your turn." He then asked Mr. Ramos Sosa to comply with T.S.'s orders "for him." Mr. Ramos Sosa at first refused, but the Captain eventually talked him into it. Again, refusing a superior officer's orders should have come with some form of discipline, but Mr. Ramos Sosa was allowed to go on with his work as usual.

10.     When T.S. reported Mr. Ramos Sosa's ongoing behavior to Captain Stith later that day, he responded that she should not have talked about being gay. He said, explicitly, that Mr. Ramos Sosa had a problem with her being a "young gay female." He ordered her never to talk about her personal life again, and discouraged her from calling HR so he could have more time to "change [Mr. Ramos Sosa's] mind about homophobia." He refused to switch her shift so she could get away from her harasser.

11.     Almost immediately after this conversation, the Captain asked Mr. Ramos Sosa about his girlfriend in front of T.S. It was clear that the rule was not "don't talk about your relationships," but rather, "don't talk about being gay."

12.     On January 3, 2019, T.S. observed Mr. Ramos Sosa writing in a journal for 45 minutes and not fulfilling his duties, including not updating the ship's heading. Being on watch is like being a lifeguard; any activity that would take your eyes off of the water is strictly prohibited, for safety reasons. When T.S. asked him to please stop writing, he responded, "Do you think I give a shit what you say?" T.S. called the Captain to intervene.

13. When Captain Stith arrived on the bridge, he did not allow T.S. to explain, but instead ordered her to go to her room and stay in there until he released her. The Captain kept her in her room for 9 hours.

14. For the first 20 minutes of being confined to her room, T.S.'s intra-ship phone line appeared to be disabled. She asked Captain Stith if she could use the ship's satellite phone to call HR.

15. When she got in touch with HR at around 9:30 am, the HR representative said they would not pay to fly her home until the HR investigation was complete. This could have been months.

16. T.S. was terrified, and wanted to leave the ship immediately. She sent HR her notes on the situation, ending with: "Please help me."

17. At 11:00 am, the Captain came by T.S.'s cabin and told her he felt like he "let her down." However, he did not release her from her room.

18. At 4:00 pm, T.S. asked if she could go to work. The Captain said he didn't know yet.

19. While she was confined to her room, she missed the opportunity to do overtime work from 1:00 to 5:00 pm.

20. At 6:00 pm, the Captain called T.S. and told her he was going to let her go back to work for the night's watch shift with a different Able Bodied Seaman, Cole Linnell.

21. At 9:00 pm, the Captain accused T.S. of missing an inspection. T.S. explained that this specific inspection wasn't part of her duties, but she was willing to take it on in the future. The Captain agreed, but then told T.S. that he had actually already done this inspection on December 28, 2018. T.S. found it strange that the Captain had accused her of forgetting about a task that was not assigned to her and that he had already completed 6 days prior.

22.    After experiencing mistreatment by both the AB and the Captain, T.S. started keeping her room locked because she was afraid someone would take or tamper with the log that she was keeping.

23.    The next day, when she went to the galley to order breakfast, she saw Mr. Ramos Sosa and did not feel comfortable being in the same room as him. She was astounded that he had not been sent home for his harassment against her, and began to realize that no one on the ship had her back. She started taking all her meals back to her room.

24.    That morning, the Captain shadowed T.S. on her watch, scrutinizing her work for mistakes. To T.S.'s knowledge, the Captain did not shadow any other employees in this way.

25.    At 3:30 pm, T.S. was instructed to walk around the deck to look for something to do. She felt fearful of running into Mr. Ramos Sosa while alone on the deck.

26.    At 4:00 pm, she asked the Captain if she could use the satellite phone to call her union representative because she was feeling unsafe.

27.    The Captain pressured T.S. to explain, again, why she felt unsafe. When she did, he became defensive, and refused to do anything.

28.    In her logs from this time, T.S. describes the "mental torture" she was going through because she was fearful of retaliation from both Mr. Ramos Sosa and the Captain.

29.    At 6:00 pm, T.S. again talked to the Captain about her safety concerns. This time, he said she would not have to work with Mr. Ramos Sosa anymore. T.S. did not trust him or feel that the issue was truly resolved.

30.    On January 5, T.S. woke up feeling, in her own words, "uncomfortable and emotionally exhausted/crying from feeling so continuously distraught, isolated, fearful of retaliation/targeting, and feeling unsafe."

31.     The ship arrived in Puerto Rico. T.S. called HR and pleaded with them to help her get off the ship immediately. HR changed their tune, and offered to fly her to Florida the next day. They said this was because she had said the specific words, "I feel unsafe," that they were able to fly her back to the U.S. This was confusing to T.S., as she had been communicating her fear for her safety since the last incident, and had sent them her entire log of the harassment incidents.

32.     Later that day, T.S. talked to Mr. Voss and told him everything that had been going on. Mr. Voss responded, "I hope one day, as you get older, that you can see this from the Captain's side, and know how much he has going on, and how nice it is for him to be focusing on dealing with you."

33.     On the morning of January 6, 2019, T.S. volunteered to take the watch shift until noon, even though she was about to leave the ship and was not obligated to do this. During this shift, Mr. Voss called T.S. out on the radio for failing to unplug a refrigerated container from the deck. Unplugging this container was not T.S.'s responsibility, and this call-out was another contrived and baseless reprimand, just like the Captain accusing her of missing an inspection. It was clear that Captain Stith and Mr. Voss were looking for reasons to get T.S. in trouble.

34.     Later that day, T.S. flew from Puerto Rico to Florida, and met with HR to discuss her treatment on the ship. During this conversation, HR suggested that T.S., a gay woman, had been in a sexual relationship with Mr. Ramos Sosa, and asked if she had ever sexually harassed him. HR told T.S. that it would take six weeks for them to conclude their investigation, but that she was "welcome to return to the ship at any time."

37.     Unable to go back to the incredibly hostile work environment with no changes made, T.S. sent in her resignation on February 28th, 2019.

38.     T.S. was constructively discharged after enduring homophobic and sexist harassment from her AB and the Captain. The Captain not only participated in the harassment, but also negligently refused to manage the AB's behavior or follow anti-harassment procedures. T.S. had to flee the ship, whereas Mr. Ramos Sosa was able to carry on with his career.

40.     T.S. has suffered greatly since being forced out of the industry. She was working as a waitress, then as a bartender, and is now unemployed. She does not feel safe returning to the shipping industry at all, which is significant because she spent considerable time and money on education in this field, having graduated from the California Maritime Academy with a BS in marine transportation, minor in law, and simultaneously earned the US Coast Guard Unlimited Tonnage 3rd Mate License.

41.     Furthermore, T.S. can no longer access the $2,793.69 in her AMO Pension plan, which she would have had access to if she had worked 100 days at sea in 2019.

42.     T.S. has been diagnosed with PTSD from the events that transpired on the TOTE vessel. She has experienced trauma flashbacks, vomiting, fainting, recurring nightmares, insomnia, hyper vigilance, hair pulling, vertigo, and headaches. She had to go to the ER on one occasion after fainting during a particularly bad flashback.

## IV.     CAUSES OF ACTION

The above paragraphs are herein incorporated by this reference.

1. **Discrimination:** Defendants, by and through their actions and/or omissions, discriminated against Plaintiff T.S. on the basis of her sex and sexual orientation in violation of RCW 49.60.

2. **Harassment:** Defendants, by and through their actions and/or omissions, harassed Plaintiff T.S. because of her sex and sexual orientation in violation of RCW 49.60 and WAC 162-32-040.

3. **Intentional Infliction of Emotional Distress:**  Defendants, by and through their actions and/or omissions, intentionally inflicted emotional distress upon Plaintiff T.S. in violation of RCW 49.60.

4. **Negligent Infliction of Emotional Distress:**  Defendants, by and through their actions and/or omissions, negligently inflicted emotional distress upon Plaintiff T.S. in violation of RCW 49.60.

5.  **Constructive Discharge:** The conduct, acts and omissions of Defendants were the proximate cause of Plaintiff's resignation from employment with TOTE, and constitute constructive discharge in violation of RCW 49.60.

6. **Maintenance and Cure:** Plaintiff is entitled to compensation under the common law duty of a ship owner to provide maintenance and cure.

7. **Other Claims:**  Plaintiff reserves the right to conduct discovery into alternative claims and additional defendants and to amend these charges as necessary.

## VII. PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment against Defendants as follows:

1. That the Plaintiff be awarded damages for humiliation, personal indignity, embarrassment, fear, sadness, anger, anxiety, anguish and other forms of emotional distress she has experienced, in an amount to be proven at trial;

2. That Plaintiff be awarded lost wages stemming from the constructive discharge;

3. That the Plaintiff be awarded pre- and post- judgment interest to the extent authorized by law;

4.  That Plaintiff be awarded compensation for the medical care needed to treat the psychological injuries inflicted aboard the vessel, as well as day-to-day living expenses, until she is fit for duty, or until she has reached a point where additional medical treatment will not help her;

5.  That Plaintiff be awarded all other actual damages;

6.  That Plaintiff be awarded his reasonable attorney's fees and costs; and

7.  That Plaintiff be awarded such other relief as the Court deems just and proper.

DATED April 2, 2021.

Lavender Rights Project, by:

_____
Morgan Mentzer, WSBA #47483
Attorney for Plaintiff T.S.

1
2
3
4
5
6
7

**SUPERIOR COURT FOR THE STATE OF WASHINGTON**
**FOR KING COUNTY**

8

9     T.S.,

10                                  Plaintiff,

11        v.

12     TOTE Services, LLC,

13

14                                  Defendant.

No. 21-2-02611-3 SEA

NOTICE OF APPEARANCE

***[CLERK'S ACTION REQUIRED]***

15     TO:          T.S., Plaintiff

16     AND TO:      Morgan Mentzer, Lavender Rights Project, Attorneys for Plaintiff

17

18              PLEASE TAKE NOTICE that TOTE Services, LLC enters its appearance in this action

19     by its undersigned attorneys and requests that all future paper or pleadings, except original

20     process, be served upon its attorneys at their addresses stated below.

21              DATED this 16th day of April, 2021.

22                                              DAVIS WRIGHT TREMAINE LLP
                                                *Attorneys for TOTE Services, LLC*
23
                                                By: */s/ Greg Hendershott*
24                                                   Greg Hendershott, WSBA # 27838
                                                     Margaret Burnham, WBSA #47860
25                                                   929 108th Ave. NE, Suite 1500
                                                     Bellevue, WA  98004
26                                                   Telephone: (425) 646-6100
                                                     Email: greghendershott@dwt.com
27                                                           megburnham@dwt.com

NOTICE OF APPEARANCE - 1
4822-9968-9446v.1 0115159-000001

**CERTIFICATE OF SERVICE**

I hereby certify that I caused the document to which this certificate is attached to be delivered to the following as indicated:

Morgan Mentzer
Lavender Rights Project
1004 MLK Way
Tacoma, WA  98405
morgan@lavenderrightsproject.org

☐ Messenger
☐ U.S. Mail, postage prepaid
☐ Federal Express
☐ Facsimile
☒ Email
☒ ECF if signed up

*Attorneys for Plaintiffs*

Declared under penalty of perjury under the laws of the state of Washington dated at Bellevue, Washington this 16th day of April, 2021.

By */s/ Victoria White*
Victoria White, Legal Assistant

NOTICE OF APPEARANCE - 2
4822-9968-9446v.1 0115159-000001